**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No.: 22-cr-212-RMR-2

UNITED STATES OF AMERICA,

      Plaintiff,

v.

2.  WILLIAM BLAKE PLSEK

      Defendant.

_____

**DEFENDANT WILLIAM BLAKE PLSEK'S MOTION FOR BELOW GUIDELINES
SENTENCE**
_____

      Defendant William Plsek, by and through counsel, respectfully moves this Court to impose a sentence below that recommended by the advisory United States Sentencing Guidelines. Mr. Plsek requests that he be sentenced to five years of probation. If the Court does not deem probation appropriate, Mr. Plsek requests that he be sentenced to 12 months and one day. While these proposed sentences are below the advisory sentencing guideline, both are sufficient but not greater than necessary in this unique case.

**I.  INTRODUCTION**

      Mr. Plsek comes before the Court for sentencing as the result of his guilty plea to Count 1 of the Indictment – Conspiracy to Distribute and Possess with Intent to Distribute DMT. Mr. Plsek filed an Objection to the PSR detailing his objections. Doc 67. Mr. Plsek contends that the estimated guideline calculation reflected in the Plea Agreement is correct except that Mr. Plsek should receive an additional two-point

reduction for his minor role in the offense.  Because Probation believes that a minor role adjustment is appropriate, the Government does not object to the role reduction.  As such, Mr. Plsek contends that the total offense level is 17.  Based on a criminal history category I, the resulting advisory guideline in this case is 24-30 months.

Based on the nature of the offense and Mr. Plsek's history and characteristics, including his demonstrated sobriety and compliance while being supervised in the community, a downward variant sentence of probation is appropriate in this case.  As this is a Class C Felony, Mr. Plsek is eligible for not less than one nor more than five years of probation.  Understanding that he committed a serious crime, Mr. Plsek seeks the maximum probationary term of five years.

## II.  SENTENCING UNDER 18 U.S.C. §3553(A)

The Court's sentencing decision is guided and governed by 18 U.S.C. §3553(a), which directs that the Court should impose a sentence that is sufficient, but not greater than necessary.  In making its determination, the Court is specifically directed to consider both the nature and circumstances of the offense and the history and characteristics of the defendant, among other factors.

The sentencing guidelines promulgated by the United States Sentencing Commission are advisory.  Rather than focusing solely on the calculated guideline, courts must "consider all of the §3553(a) factors to determine whether they support the sentence requested by a party." *Gall v. United States*, 552 U.S. 38, 49-50 (2007).  In short, the Court must "consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate, sometimes magnify, the

crime and punishment to ensue." *Id.* at 52.  In this specific case, a below-guideline, downward-variant sentence should be imposed.

## III.  RELEVANT §3553(A) FACTORS JUSTIFYING A SENTENCE BELOW THE ADVISORY GUIDELINE RANGE

**A.     History and Characteristics of the Defendant**

***Family and Home***

A strong protective factor is Mr. Plsek's relationship with his family.  He was raised by his mother and father in rural Texas and Georgia.  Mr. Plsek's parents have been married for forty-five years.  Aged forty-one years old, Mr. Plsek is currently living with his parents and ninety-year-old grandmother in Friendswood, Texas. He shares a strong and loving relationship with all of them.  Mr. Plsek, who has been diagnosed with autism, also may be suffering from depression according to his mother.

Living with his family in his family home provides Mr. Plsek with a stable and supportive environment.  Unfortunately, Mr. Plsek's mother was diagnosed with uterine cancer in January 2021.  Having Mr. Plsek home has been a tremendous help and comfort to Mrs. Plsek. Mr. Plsek provides daily care for his mother and his grandmother, as well as performing various tasks and maintenance on the home.  Mr. Plsek's supervising probation officer has conducted numerous home visits and reports no concerns with Mr. Plsek's living environment.  Mr. Plsek is welcome to live with his family in the family home for the foreseeable future.

***Employment***

Mr. Plsek lives a simple life.  He has few expenses, requires little, and therefore does not spend much money.  He has never had a passport, nor does he have any credit cards.  In addition to helping care for his mother and grandmother, he is currently working as a caregiver for a friend who suffered a stroke.  He helps her once or twice a week and is paid $15/hour.  For the last ten years, Mr. Plsek has made tapestries and t-shirts which he sells to friends and acquaintances.  Mr. Plsek earns approximately $1000-$1500/month from these jobs.

While he no longer makes money from touring, Mr. Plsek is a musician.  It is his passion.  For many years, Mr. Plsek, who is a talented and self-taught guitar and banjo player, made a living playing gigs at various bars and clubs.  When the COVID-19 pandemic hit, his musical career came to a grinding halt.  Without the ability to earn money by playing music at clubs and bars, Mr. Plsek unfortunately made the choice to supplement his income by working for the co-defendant.

Mr. Plsek has contributed to the community by doing volunteer work.  In 2009, Mr. Plsek began volunteering for the Kerrville Folk Festival.  He has continued to serve as an unpaid volunteer every year and has been an invaluable member of the team. The Staff Coordinator's letter commends Mr. Plsek's ability to "problem solve his way through complex engine and mechanical repairs, all while keeping his composure and great, friendly attitude during difficult and stressful times." *See* PSR Attachment. Just prior to his arrest in this matter, Mr. Plsek was offered his dream job - a paid position

with the Kerrville Folk Festival.  It is his hope to return to volunteering at the festival and potentially regaining the opportunity for a paid position.

On the day that this Motion was filed, Mr. Plsek was offered a well-paying job driving heavy equipment in the Houston area.  The employer is willing to keep the position open and available to Mr. Plsek pending the sentencing in this case.  If Mr. Plsek is sentenced to probation, he will have a full time well-paying job opportunity waiting for him.

### Pretrial Supervision Compliance

Probation recommends a variant sentence based on the type of drug involved in this case as well as his compliance on pretrial supervision. *See* PSR Exhibit A, Justification page R-3.  Though Probation calculates a higher offense level, the same logic applies regardless of the offense level.  For the nearly six months that he has been on pretrial supervision, Mr. Plsek has demonstrated that can be effectively supervised in the community.  Mr. Plsek's supervising officer in Texas indicates that he is fully compliant with all conditions of his bond.  PSR page 4, paragraph 5.  Mr. Plsek has participated in substance abuse treatment and all of his urinalysis screens have been negative for all substances. PSR page 14, paragraph 69.

### Age and Lack of Recent Criminal History

Mr. Plsek is forty-one years old.  Twenty-one years ago, when he was twenty years old, Mr. Plsek sustained a conviction for his involvement in transporting cocaine. He also sustained two Driving While Intoxicated cases when he was in his twenties.  Mr.

5

Plsek has no history of violence, nor has he been in trouble with the law for the past fourteen years.

## B.     Nature and Circumstances of Offense

Mr. Plsek acknowledges and accepts responsibility for committing this crime. The evidence in this case establishes that Mr. Plsek, working at the direction of the co-defendant, picked up packages which he believed contained Mimosa Hostilis root bark, from which DMT can be extracted. The co-defendant was the person involved in the initial procurement and purchase of the bark, the marketing, and the eventual sale of DMT.  The co-defendant directed Mr. Plsek.  Mr. Plsek did not assist the co-defendant with his on-line marketing of the product, nor did he ever use his personal crypto wallet to make purchases of Mimosa Hostilis or receive payment from the co-defendant's customers. There is no evidence that Mr. Plsek has ever even been on the dark web.

Mr. Plsek set up a Bitcoin wallet as that is how the co-defendant paid Mr. Plsek. Unlike the co-defendant, Mr. Plsek was not charged with Money Laundering.  The Additional Information provided in paragraph 9 of the PSR indicates that "Shimshai," who is identified as the co-defendant, was using crypto currency to purchase illicit goods and sell DMT since 2017.  Mr. Plsek was not involved with Mr. Clements' illicit business in 2017 and there is no evidence to the contrary. Mr. Plsek worked for the co-defendant for approximately one year after he lost his ability to earn a living through playing music.  That was a bad decision that Mr. Plsek made in desperate times. What is clear is that Mr. Plsek was just a temporary worker, and not involved in the set up or management of this operation.  Probation indicates, "There is no information to indicate

the defendant accessed the vendor page, assisted in any marketing, or recruited customers." PSR page 9, paragraph 30.  After a thorough analysis of the evidence and circumstances, probation concludes that a minor role adjustment is appropriate.  *Id.*

As indicated by Mr. Plsek and confirmed by Ms. Prejea, his parents, and his numerous negative urinalysis screens, Mr. Plsek has abstained from alcohol use for several years.  Mr. Plsek blames his alcohol use for losing his last significant relationship.  At the time that he was working for the co-defendant he believed in the therapeutic benefit of DMT to help treat alcohol abuse.  Although using DMT for the treatment of alcohol use disorder may seem counterintuitive, scientists have been studying the use of psychedelics for the treatment of alcohol use disorder for decades, starting in 1953 with LSD.  *See* Erika Dyck, *Flashback: Psychiatric Experimentation with LSD in Historical Perspective,* Can J Psychiatry, Vol 50, No 7, June 2005.  Recent findings suggest that there is promising evidence about the feasibility, safety, and efficacy of psychedelic therapy on the treatment of substance use disorders, including use of DMT.  *See* Exhibit A – Novel Treatment Approaches for Substance Use Disorders:  Therapeutic Use of Psychedelics and the Role of Psychotherapy.

Of course, DMT is still a schedule I controlled substance at the federal level.  However, some states, including Colorado, are starting to take a different view of DMT.  In November 2022, Colorado voters passed Proposition 122 which decriminalized psychedelic "natural medicine," including DMT.  In December 2022, NFL quarterback and former Most Valuable Player, Aaron Rogers, admitted to using ayahuasca, a substance similar to DMT, to help him alleviate his fear of death.  Undoubtedly, there is

growing support in our country to the notion that there are benefits to DMT. It is not the intention of Mr. Plsek to advocate for the therapeutic use of DMT and he makes no excuses for violating the law.  But at the time that he was engaging in this crime, he did not feel like he was contributing to the plague of drug addiction.  Understanding that the federal government classifies DMT a schedule I controlled substance, DMT does not seem to pose even close to the same level of harm and impact as opioids and methamphetamine on our community.

Mr. Plsek has learned a hard lesson in this case.  Part of the lesson is that one cannot choose to disobey a law because you disagree with it.  Mr. Plsek, who was arrested in Texas and transported to Colorado, spent nearly two months in three different jails. At the second jail in Oklahoma, Mr. Plsek became severely ill with COVID-19.  He reports lasting effects including numbness in his extremities.  Mr. Plsek's experience of being incarcerated in three different jails over a two-month period while being extremely sick made Mr. Plsek value freedom and serves as a deterrent to himself and others.

Mr. Plsek's experience in jail also helped him recognize that his stance on DMT was naïve.  What he recognized spending those two months in jail is that drug use and addiction destroys people's lives.  He recognizes and acknowledges that his actions contributed to this epidemic.  Mr. Plsek deeply regrets his actions and is demonstrating this by his strict compliance with the terms of his community supervision.

## IV.  CONCLUSION

Mr. Plsek not only accepts responsibility for his crime, but he has demonstrated responsibility and respect for the laws since he was released on bond with pretrial conditions on August 12, 2022.  While he undoubtedly made a bad and illegal decision, the experience of spending two months in jail while sick with COVID served as a significant punishment, deterrent, and overall eye-opener.  With no history of violence, sobriety, a loving family, and stable environment, Mr. Plsek has shown that he can be safely and effectively supervised in the community.

Dated:   January 25, 2023.

Respectfully submitted,

*s/ Dru Nielsen*
Dru Nielsen, #28775
HADDON, MORGAN AND FOREMAN, P.C.
950 17th Street, Suite 1000
Denver, CO 80202
Tel: 33.831.7364
Fax : 303.832.2628
dnielsen@hmflaw.com

*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2023, I electronically filed the foregoing *DEFENDANT WILLIAM BLAKE PLSEK'S MOTION FOR BELOW GUIDELINES SENTENCE* with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

<u>   s/ Savanna Benninger   </u>